**In re Anonymous No. 100 D.B. 84**

Disciplinary Board Docket no. 100 D.B. 84.

CAROSELLI, *Member,* April 18, 2001—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

Petitioner, [   ], filed a petition for reinstatement to the bar of Pennsylvania on April 6, 2000. Petitioner was disbarred on consent by order of the Supreme Court of Pennsylvania on December 14, 1984. This is petitioner's second request for reinstatement. His first petition for reinstatement was denied by order of the Supreme Court dated July 21, 1993.

A reinstatement hearing was held on August 25, 2000 before Hearing Committee [    ] comprised of Chair [    ], Esquire, and Members [    ], Esquire and [    ], Esquire. Petitioner was represented by [    ], Esquire. Office of Disciplinary Counsel was represented by [    ], Esquire.

The committee filed a report on January 12, 2001 and recommended that the petition for reinstatement be granted.

No briefs on exception were filed by the parties.

This matter was adjudicated by the Disciplinary Board at the meeting of April 18, 2001.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner was born in 1949 and was admitted to practice law in Pennsylvania in 1978. He resides at [    ].

(2) Petitioner was employed by the law firm of [A] P.C., from August 1978 until December 1984.

(3) Petitioner was disbarred on consent in 1984 after he misappropriated funds from the law firm.

(4) The misappropriation took place between 1981 and 1984. Petitioner misappropriated the funds by either keeping cash which was provided to him by clients, or by endorsing checks made payable directly to him.

(5) In November 1984, petitioner's theft was discovered by the firm, at which time petitioner admitted his misconduct and stopped practicing law pending action by the Disciplinary Board.

(6) Petitioner pleaded guilty in the Court of Common Pleas of [    ] County to criminal charges involving the

misappropriation of $54,398 from the law firm. He was sentenced to 11 1/2 to 23 months in the county prison, a $2,000 fine, and restitution. Petitioner served one-half of the minimum, following which he was placed on work release for the remainder of the minimum sentence. Petitioner made full restitution to the firm.

(7) In 1991, petitioner filed a petition for reinstatement. This petition was denied by order of the Supreme Court dated July 21, 1993.

(8) Following petitioner's disbarment, he worked on a steady basis, including law-related jobs with [B], Esquire as a law clerk; [C] P.C., as a law clerk; [D] Law Offices Ltd., as a paralegal; and [E], Esquire, as a paralegal.

(9) Petitioner performed legal research, writing, and drafting of documents in a wide variety of matters.

(10) Petitioner became employed by Attorney [E] in April of 1997 and since that time he has worked for Attorney [E] on a full-time basis.

(11) Petitioner was diagnosed as suffering from bipolar syndrome in 1993. It was also discovered that he had a developmental disorder which impacted his social skills and perception. At the time of his diagnosis, petitioner was dealing with the discovery that his only son was autistic, as well as his own alcohol abuse problems.

(12) Petitioner received therapy to handle these disorders. He has treated in the past with various professionals, including Dr. [F], a psychiatrist with whom he treated from May 1997 to April 1999. Petitioner presently consults with Dr. [F] on an as-needed basis. Petitioner at-

tends a support group for bi-polar individuals at the [ ] Mental Health Center.

(13) Petitioner's condition is stable at the present time.

(14) Following the denial of the first reinstatement petition, petitioner was involved in two incidents with the law. In 1995, his former wife filed harassment charges against him after a domestic altercation, resulting in petitioner grabbing his wife and pushing her to the floor. The second incident occurred in 1997 when he failed to stop his car at a security gate, causing two guards to chase him and force him off of the road.

(15) At the time of these incidents petitioner had been diagnosed as bi-polar, and although he was being treated, he had been taken off his medication due to side effects.

(16) Petitioner presented the testimony of six character witnesses. These witnesses included his employer, [E], as well as three attorneys, an accountant and an engineer, all of whom work in petitioner's community.

(17) These witnesses were aware of the reasons for petitioner's disbarment and his subsequent personal problems. Petitioner has a very good reputation in the community for truth and honesty, and in the legal community it is known that he has made every effort to rehabilitate himself.

(18) These witnesses had no hesitation in recommending petitioner's reinstatement to the law.

(19) Petitioner fulfilled his required continuing legal education courses for reinstatement. He ensured his continued competency in the law by performing legal re-

search, writing, reading and reviewing the law as part of his law clerk job duties.

(20) Petitioner expressed sincere remorse for his misconduct and has taken steps to ensure that his acts of misconduct will never be repeated.

## III. CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate consideration of his petition for reinstatement.

(2) Petitioner has demonstrated, with clear and convincing evidence, that he possesses the moral qualifications, competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

(3) Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar nor subversive of the interests of the public.

## IV. DISCUSSION

Petitioner's request for reinstatement to the bar after disbarment is initially governed by the standard set forth by the Supreme Court of Pennsylvania in *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). The *Keller* opinion articulates a threshold which must be met before the requirements of Pa.R.D.E. 218(c)(3)(i) are considered. This threshold inquiry is whether the magnitude of the breach of trust would permit the resumption of practice without a detrimental effect upon the integrity and standing of the bar or the administration of justice nor be subversive of the public

interest. *Keller* thus requires a determination that the original misconduct was not so offensive as to preclude reinstatement.

Petitioner was disbarred for misappropriating legal fees from his law firm. On August 15, 1985, petitioner pleaded guilty to having misappropriated $54,398.02 and was sentenced to serve 11 1/2 to 23 months in the county prison. Petitioner's misappropriations began in or about 1981. At that time it was petitioner's belief that he was going to be made a partner in the firm, but he soon came to realize that the firm intended for another attorney to become a partner instead of petitioner. Petitioner began to retain monies that clients had paid to him for services rendered by him as an employee of the firm. Petitioner's theft of firm funds escalated between 1981 and 1984, until they were finally discovered in November of 1984.

While misuse of client or law firm funds is very serious misconduct and may form the basis for disbarment, such misconduct does not necessarily preclude reinstatement. *In re Anonymous No. 6 D.B. 83,* 26 D.&C.4th 61 (1994). Prior cases demonstrate that attorneys disbarred for similar improprieties have been readmitted to the bar. Thus, while petitioner's misconduct was certainly repugnant to the public trust, it does not rise to the level to prohibit reinstatement.

The board must next determine whether petitioner met his burden of proving by clear and convincing evidence that he has the moral qualifications, competency and learning in the law required for admission to practice law in Pennsylvania, and that his current resumption of the practice of law would not have a detrimental impact

on the integrity and standing of the bar, the administration of justice, or the public interest. Pa.R.D.E. 218(c)(3)(i). In order to make this determination, the board must consider the amount of time that has passed since petitioner was disbarred, as well as his efforts at rehabilitation.

Petitioner was disbarred in 1984. He has been without a license to practice law for more than 16 years. The record demonstrates that during this time frame he actively worked to rehabilitate himself, both in his personal life and in his professional life. He completed his jail term and work release and paid fines and costs associated with his conviction. Petitioner made restitution to his former law firm. He sought professional counseling for emotional and medical problems. Following his disbarment, he has worked on a steady basis doing paralegal work and is currently employed by a sole practitioner as a paralegal, with the possibility of full-time employment as an attorney upon his reinstatement.

Petitioner experienced some difficulties during the time frame of his disbarment, including minor incidents with the law in 1995 and 1997 related to his emotional problems and his divorce, but he dealt with these problems and was able to go forward with his life. The testimony of character witnesses at the hearing clearly shows that petitioner has made noticeable changes in his life. These changes enabled the witnesses to unequivocally state that petitioner's readmission to the bar would not be subversive of the public interest or prejudicial to the administration of justice.

Considering all of the foregoing facts, the board is persuaded that petitioner has demonstrated that he has

engaged in a qualitative period of rehabilitation during his 16-year disbarment. Petitioner has met his burden of proving that he has the moral qualifications, learning and competency to practice law, and that his resumption of the practice of law would not have a detrimental impact on the integrity and standing of the bar, the administration of justice or the public interest. Petitioner has shown that he is prepared to accept his responsibilities as a lawyer and to conduct himself in an ethical manner.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, [    ], be reinstated to the practice of law.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Members Schultz, Donohue and Cunningham did not participate in the April 18, 2001 adjudication.

## ORDER

And now, October 11, 2001, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated September 4, 2001, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.